EXHIBIT "A"

FUJIWARA AND ROSENBAUM, LLLC

ELIZABETH JUBIN FUJIWARA 3558
JOSEPH T. ROSENBAUM 9205
1100 Alakea St., 20th Fl., Ste B
Honolulu, Hawaii 96813
Telephone: 808-203-5436

Attorneys for Plaintiff
JOSEPH GANDOLFO

**Electronically Filed
FIRST CIRCUIT
1CCV-21-0001080
03-SEP-2021
10:44 AM
Dkt. 1 CMP**

IN THE CIRCUIT COURT OF THE FIFTH CIRCUIT

STATE OF HAWAII

| | |
|---|---|
| JOSEPH GANDOLFO, | ) CIVIL NO. |
| | ) (Other Civil Action) |
| Plaintiff, | ) |
| | ) COMPLAINT; DEMAND FOR JURY |
| vs. | ) TRIAL |
| | ) |
| AVIS BUDGET GROUP, INC., a foreign | ) |
| profit corporation; JOHN DOES 1-10; JANE | ) |
| DOES 1-10; DOE CORPORATIONS 1-10; | ) |
| DOE PARTNERSHIPS 1-10; DOE | ) |
| UNINCORPORATED ORGANIZATIONS | ) |
| 1-10; and DOE GOVERNMENTAL | ) |
| AGENCIES 1-10, | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |

## <u>COMPLAINT</u>

COMES NOW Plaintiff JOSEPH GANDOLFO [hereinafter referred to as "MR.

GANDOLFO"] and complains against the above-named Defendants alleges and avers as follows:

### I.  NATURE OF CASE

1.      The basis of this AVIS BUDGET GROUP, INC. [hereinafter "ABG"] is

employment discrimination law violations as related to MR. GANDOLFO's employment at

ABG.

## II. JURISDICTION

2.    MR. GANDOLFO brings this action pursuant, including, but not limited to, Hawaii Revised Statutes ["HRS"] Chapter 378 Part I, Discriminatory Practices, to obtain full and complete relief and to redress the tortious conduct described herein.

3.    At all times relevant herein, MR. GANDOLFO was a resident of the County of Kaua'i, State of Hawaii.

4.    At all times relevant herein, Defendant ABG is an employer within the meaning of HRS Chapter 378.  ABG was and is doing business in the County of Kaua'i, State of Hawaii.

5.    At all times relevant herein, Defendant ABG's is a for-profit business incorporated in the State of Delaware.

6.    Upon information and belief, and at all times relevant herein, Defendant ABG's employees, agents and/or representatives, were acting within the course and scope of their duties as employees, agents and/or representatives of ABG; therefore, ABG is liable for the intentional and/or tortious and/or wrongful conduct of said employees, agents and/or representatives pursuant to the doctrine of Respondeat Superior and/or principles of Agency.

7.    Defendants JOHN DOES 1-100, JANE DOES 1-100, DOE CORPORATIONS 1-10, DOE PARTNERSHIPS 1-10, DOE UNINCORPORATED ORGANIZATIONS 1-10, and DOE GOVERNMENTAL AGENCIES 1-10 are sued herein under fictitious names because their true names, identities and capacities are unknown to the MR. GANDOLFO, except that they are connected in some manner with Defendants, and are/were agents, servants, employees, employers, representatives, co-venturers, associates, or

independent contractors of Defendants herein, and were acting with the permission and consent and within the course and scope of said agency and employment and/or were in some manner presently unknown to the MR. GANDOLFO engaged in the activities alleged herein and/or were in some way responsible for the injuries or damages to the MR. GANDOLFO, which activities were a proximate cause of said injuries or damages to the MR. GANDOLFO.  MR. GANDOLFO has made good faith and diligent efforts to identify said Defendants, including interviewing individuals with knowledge of the claims herein. At such time as their true names and identities become known, the MR. GANDOLFO will amend this Complaint accordingly.

8.    All Defendants will be collectively referred to as "DEFENDANTS".

9.    All events done by DEFENDANTS described herein occurred within the County of Kaua'i, State of Hawai'i, and within the jurisdiction and venue of this Court.

### III.  STATEMENT OF FACTS

10.    In April 2015, MR. GANDOLFO began working for the ABG as a Sales Associate in Lihu'e, Kaua'i.

11.    In November 2016, MR. GANDOLFO began to develop a disability.

12.    ABG was made aware of MR. GANDOLFO's medical disability and his subsequent and related surgery in January 2017.

13.    Upon his release back to work after his surgery, MR. GANDOLFO requested a reasonable accommodation as to his parking at the workplace as an accommodation for him to be able to function in the workplace.

14.    Initially, ABG provide MR. GANDOLFO with this accommodation without issue.

15.    In late April 2017, MR. GANDOLFO developed emergency disability

complications and his doctor recommended that he undergo an immediate medical assessment. The day before his appointment for the medical assessment, MR. GANDOLFO obtained approval from his manager, Brad Gipolan, to leave one (1) hour early from work around 5:15 p.m.

16.    Mr. Gapolan told MR. GANDOLFO that he would text the supervisors to let them know MR. GANDOLFO needed to leave early to have that time off.

17.    However, the following day, MR. GANDOLFO was harassed by three (3) supervisors including, Bonnie Howard, Greg Alejandro and Thomasyna Bungula, who told MR. GANDOLFO that he could not attend his medical appointment.

18.    MR. GANDOLFO was also informed if he left the workplace it would be considered job abandonment and he would be subjected to disciplinary action, including possible termination.

19.    MR. GANDOLFO explained that he had authorization from Mr. Gipolan and explained the reason for his medical appointment.

20.    These three (3) supervisors told MR. GANDOLFO he was not authorized to leave an hour early and wanted MR. GANDOLFO to sign a form stating that he was abandoning his job.

21.    MR. GANDOLFO refused to sign the form and asked them to call Mr. Gipolan.

22.    They refused to call Mr. Gipolan.

23.    Due to severity of his medical condition, MR. GANDOLFO went to his scheduled appointment and later filed an internal harassment complaint with ABG integrity hotline against Ms. Howard, Mr. Alejandro and Ms. Bungula.

24.    MR. GANDOLFO does not believe ABG adequately addressed the disability harassment that he reported as the harassment continued.

25.    After his medical appointment, MR. GANDOLFO even sent his supervisors photos of himself at the clinic having his procedure done along with a note that the ultrasound technician wrote that MR. GANDOLFO was there due to a life-threatening condition.

26.    The following Monday, MR. GANDOLFO was also harassed about attending his medical appointment by ABG's General Manager on Kaua'i, Cesar Acoba.

27.    Mr. Acoba knew of MR. GANDOLFO's medical disability and his previous surgery.

28.    Mr. Acoba said MR. GANDOLFO had to have his medical appointment on his days off and that there was no doctor that would have a medical appointment on a Saturday at 5:00 p.m.

29.    MR. GANDOLFO said that was not true and that it was a medical emergency that need to be checked out as soon as possible.

30.    MR. GANDOLFO also told Mr. Acoba that he had authorization for his medical appointment.

31.    Mr. Acoba said that it didn't matter if Mr. Gipolan gave MR. GANDOLFO authorization.

32.    MR. GANDOLFO started to breakdown and cry as Mr. Acoba was essentially telling MR. GANDOLFO that he didn't have a valid medical condition.

33.    To provide otherwise, MR. GANDOLFO took down his pants to show that he had crotch-high compression stockings on both of his legs.

34.    MR. GANDOLFO then said it's nice that you have to humiliate an

employee just for him to prove he has a valid medical condition.

35. After MR. GANDOLFO informed Mr. Acoba that he filed an internal complaint, Mr. Acoba changed his demeanor and apologized.

36. Nevertheless, MR. GANDOLFO continued to be subjected to unlawful disability harassment and retaliation by ABG management and non-management employees.

37. In May 2017, MR. GANDOLFO was out from work due to undergoing an additional surgery for his disability.

38. However, he continued to experience more complications that adversely affected his personal mobility.

39. In the beginning of September 2017, MR. GANDOLFO's car was blocked into his parking spot at the ABG parking lot by his coworker Mark who locked the keys in the rental car, so MR. GANDOLFO had no way to get out. T

40. here were many open spots in the parking lot that Mark could have parked the car. MR. GANDOLFO complained to management about this.

41. Mark had and would continue to make fun of and harass MR. GANDOLFO including making effeminate or a homosexual sounding voice mocking MR. GANDOLFO over the radio to all ABG employees working at the time.

42. On September 11, 2017, MR. GANDOLFO's car was keyed at the ABG parking lot.

43. MR. GANDOLFO complained about this to ABG management.

44. Any alleged investigation that was done was inconclusive as there were allegedly no witnesses.

45. Although ABG claimed they did an investigation, they allegedly lost the

investigative file.

46.     On or about September 18, 2017, MR. GANDOLFO's car was vandalized in the employee section of the ABG parking lot by he who believes was his a male coworker Mark who had previously harassed MR. GANDOLFO and who MR. GANDOLFO had complained about to management.

47.     Mark had previously questioned why MR. GANDOLFO got special parking.

48.     Prior to this, MR. GANDOLFO told Mark he had a medical condition and that was why he parked where he did. A fellow co-worker, Wanda Oshiro, also told Mark that MR. GANDOLFO had his medical issues and had surgery.

49.     A picture of male genitalia was drawn on the back window of MR. GANDOLFO's car.

50.     Mr.  Gandolfo complained about the vandalism and the unlawful harassment to ABG management to no avail.

51.     Rather, ABG management's Ms. Bungula blamed MR. GANDOLFO for the incidents, told him that he parks in the ABG parking lot at his own risk and alleged that the picture of the male genitalia was there before MR. GANDOLFO came to work.

52.     MR. GANDOLFO disagreed with all of this.

53.     On September 24, 2017, MR. GANDOLFO called the ABG integrity hotline and informed the management team of several incidents where he reported misconduct as noted above.

54.     Specifically, damage/vandalism to his vehicle while on company property and a co-worker's inappropriate and alleged discriminating/harassing behavior.

55.    On September 29, 2017, MR. GANDOLFO received a letter from ABG's

Tyler Lindstrom, Human Resources Hawai'i Region, stating:

"We have conducted a thorough investigation into these claims. Regarding the damage and vandalism on your vehicle; after a thorough investigation the management team was unable to ascertain who the culprit of these actions was or whether the incidents occurred while your vehicle was on company property. Regarding the alleged harassing or discriminatory behavior; after a thorough investigation and speaking to the employees which you specifically mentioned I was not able to confirm your allegations of any harassing or discriminatory behavior by your co-worker."

56.    It later came out that ABG alleges they lost the investigative files for the

investigation they alleged they did.

57.    In late October 2017, the ABG employees are informed that no one can

park in the ABG parking lot due to liability reasons.

58.    MR. GANDOLFO is called into the office by Mr. Acoba, Mr. Gipolan and

Mr. Greg Alejandro and is told about the new parking restrictions.

59.    MR. GANDOLFO asks if this will apply to him as he had a reasonable

accommodation.

60.    Mr. Acoba responds that, "It doesn't matter if you have a disability or not

as there is no parking on the lot for any employee and you can park at the handicap parking spots

at the airport parking lot."

61.    MR. GANDOLFO responded, "Even if I have a disability parking placard,

I can't park in the handicap spots on the ABG lot?"

62.    Mr. Acoba responded, "It doesn't make any difference."

63.    MR. GANDOLFO then asked who this applies to and Mr. Acoba

responded all employees.

64.    MR. GANDOLFO said, "So Cesar this applies to you to?" and Mr. Acoba responded angrily, "No, I'm the General Manager, I can park on the lot."

65.    MR. GANDOLFO then asks, "So who else can park in the ABG parking lot?"

66.    Mr. Acoba responds, "The management."

67.    MR. GANDOLFO asks, "Aren't they employees?"

68.    Mr. Acoba responds they are management."

69.    MR. GANDOLFO asks what about a non-management employee, Darlene Soriano, who parked in the ABG parking lot and Mr. Acoba responds, "That's Darlene, she works in the office."

70.    No other explanation was provided other than Mr. Acoba stating he could grant exceptions.

71.    MR. GANDOLFO asked why Mr. Acoba doesn't grant him an exception due to his disability and Mr. Acoba responds, "This came from corporate."

72.    MR. GANDOLFO asked then why do they have disabled parking and Mr. Acoba said that was for customers.

73.    Before exiting the meeting, MR. GANDOLFO said, "Ok fine. I have to do what you tell me to."

74.    From January 1, 2018, MR. GANDOLFO with severe pain had to drag himself with a dropped foot 806 steps from where he had to parking at the airport parking lot to the shuttle.

75.    MR. GANDOLFO had to then pull himself up on the shuttle with a dropped foot being careful he didn't trip.

76.     This caused MR. GANDOLFO severe pain and every step he took, including when he had to step down off the shuttle.

77.     The pain would shoot up his leg and into the bone as if someone had stabbed a nail into it. MR. GANDOLFO had to do this twice a day.

78.     In January 2018, MR. GANDOLFO obtained approval for intermittent FMLA leave for his disability.

79.     This leave was from January 31, 2018 to July 30, 2018.

80.     This leave was granted by Matrix and ABG managers Scott Kilbreath, Cesar Acoba, Darlene Soriano, Brad Gipolan, Thomasyna Bungula, Bonnie Howard and Greg Alejandro were all made aware of this.

81.     In early March 2018, MR. GANDOLFO scheduled an appointment with a medical specialist on O'ahu for April 4, 2018.

82.     MR. GANDOLFO obtained the necessary leave paperwork to complete and submitted it to his supervisor, Greg Alejandro, for approval.

83.     On March 28, 2018, MR. GANDOLFO followed up on his leave request with Mr. Alejandro.

84.     At that time, Mr. Alejandro denied that MR. GANDOLFO submitted any leave paperwork and told MR. GANDOLFO that he could not leave work and go to his medical appointment.

85.     MR. GANDOLFO objected to Mr. Alejandro's assertion as it was blatantly false.

86.     Mr. Acoba asked MR. GANDOLFO if he had the leave paperwork that he submitted and if he didn't it was tough luck.

87.    MR. GANDOLFO asked if he could go in Mr. Alejandro's office to see if they could find his leave form.

88.    Mr. Alejandro said no because he already looked.

89.    MR. GANDOLFO responds that he knows Mr. Alejandro's desk was a mess and MR. GANDOLFO knew what he was looking for.

90.    MR. GANDOLFO states that if they believe they are accurate then why would they not want to look for it in Mr. Alejandro's office.

91.    Mr. Acoba then states to go look.

92.    MR. GANDOLFO and Mr. Alegandro went to Mr. Alejandro's office and Mr. Alejandro picks up a manila folder entitled something like "Sales Staff Time Off Requests", opens it and says look nothing here.

93.    MR. GANDOLFO sees another manila folder on his desk underneath some papers that was entitled something like "Outside Employee Time Off Requests" and asks what about that one.

94.    Mr. Alejandro became irate, does not open the folder and says, "It's not in there."

95.    MR. GANDOLFO says, "How do you know you didn't put it in the wrong folder by accident?"

96.    Mr. Alejandro gets increasingly upset and says, "It's not in there that's the outside crew."

97.    MR. GANDOLFO asks to open it and check.

98.    Mr. Alejandro tells him no and wouldn't open it.

-11-

99.    Mr. Alejandro states that if MR. GANDOLFO didn't stop he would send MR. GANDOLFO home for insubordination.

100.    To be clear, MR. GANDOLFO had already been granted intermittent FMLA leave from January 2018 to July 2018.

101.    Mr. Acoba, upon reconvening the meeting, said, "You make your doctor's appointments on your days off."

102.    MR. GANDOLFO said he had to go to O'ahu for MS treatment and he couldn't dictate the days the doctor could see him.

103.    Mr. Acoba threatened MR. GANDOLFO with adverse employment actions, including discharge, if MR. GANDOLFO didn't cancel his medical appointment.

104.    Mr. Alejandro told MR. GANDOLFO to go home for being insubordinate due to MR. GANDOLFO's insistent to go to his medical appointment on O'ahu.

105.    MR. GANDOLFO contacted ABG's Human Resources' Scott Kilbreath again to complain about further retaliatory harassment.

106.    Nevertheless, MR. GANDOLFO, putting his health over the harassment he would face, went to his scheduled medical appointment.

107.    Upon his return to work, MR. GANDOLFO provided ABG's human resource's Scott Kilbreath, with medical documentation with his doctor's recommended and requested reasonable accommodations.

108.    ABG failed to provide one of the requested reasonable accommodations (*i.e.* a chair) in a timely and effective manner.

109.    On or about May 22, 2018, Mr. Alejandro told MR. GANDOLFO that he failed to submit documentation about his disability status in April 2018.

110.    When MR. GANDOLFO asked Mr. Alejandro to give him the underlying information Human Resources and/or Matrix sent to Mr. Alejandro, so MR. GANDOLFO could follow up with Matrix, Mr. Alejandro refused.

111.    Mr. Alejandro also said that he deleted the emails from Human Resources and/or Matrix which he purported received weeks ago, but 'forgot' about them.

112.    MR. GANDOLFO asked Mr. Alejandro to retrieve the email from his email trash box and Mr. Alejandro said it wasn't there and repeated that it was deleted.

113.    It is bizarre that no one else from ABG would not have been sent this email that could have forwarded it to MR. GANDOLFO.

114.    Again, MR. GANDOLFO complained to ABG's Human Resources' Mr. Kilbreath about this harassment although he did not believe it to be effective recourse.

115.    Due to the hostile work environment and his disability, MR. GANDOLFO went out on medical leave on May 23, 2018.

116.    On or about June 13, 2018, MR. GANDOLFO filed his first Charge of Discrimination jointly with the EEOC and the Hawai'i Civil Rights Commission alleging sex and disability discrimination and retaliation.

117.    While on medical leave, MR. GANDOLFO had to have several surgeries and developed complications which prevented him from immediately returning to work.

118.    On July 25, 2018, MR. GANDOLFO's doctor sent Matrix his medical claim documentation that MR. GANDOLFO medically needed to be out until January 25, 2019.

119.    On July 31, 2018, MR. GANDOLFO receives an email from Matrix's Ms. Donna DiConstanzo stating:

*Hi Joseph,*

-13-

*Hope you are doing well. Your claim has been reviewed by our
clinical staff and based on the information provided by your health
care provider it was determined that your leave will be extended
through 09/30/18. If you are not released to return to work on
10/01/18, we will reach out to your provider for additional medical
documentation.
Thank you,*

120.    Apparently, Ms. DiConstanzo single-handedly changed MR.
GANDOLFO's doctor's orders and demanded MR. GANDOLFO return to work prior to him
having the surgeries he needed to get back to work.

121.    MR. GANDOLFO called Ms. DiConstanzo as soon as he received her
email.

122.    Ms. DiConstanzo tried to tell MR. GANDOLFO that his doctor had
only authorized him to be out until October 2018.

123.    MR. GANDOLFO responded that that was incorrect and he was there
when his doctor wrote the note.

124.    MR. GANDOLFO asked Ms. DiConstanzo for a copy of the medical
note from his doctor and she refused.

125.    As changing the doctor's orders was highly inappropriate, MR.
GANDOLFO's doctor's office called Ms. DiConstanzo directly to tell her how inappropriate
this was.

126.    The doctor's office was hung up on by Ms. DiCostanzo. MR.
GANDOLFO complained about Ms. DiConstanzo's actions to Mr. Kilbreath and to ABG's
Corporate Regional Human Resources Manager Nicole Norwood.

127.    On September 24, 2018, MR. GANDOLFO's doctor again provided medical documentation indicating that MR. GANDOLFO would need about six (6) months of additional leave for treatment of his disability as a reasonable accommodation.

128.    MR. GANDOLFO received no immediate response from Ms. DiConstanzo, anyone else at Matrix or ABG regarding his doctor's request.

129.    On November 14, 2018, ABG management issued MR. GANDOLFO a letter citing that he exhausted all leave benefits on November 27, 2018.

130.    Moreover, it stated, if MR. GANDOLFO was unable to return to work, his employment would be terminated effective November 28, 2018.

131.    MR. GANDOLFO was ultimately terminated on December 14, 2018 without an interactive process on the part of ABG to find him a reasonable accommodation to return to work.

132.    MR. GANDOLFO timely filed his second Charge of Discrimination with the EEOC and the Hawai'i Civil Rights Commission regarding his termination.

133.    The EEOC's investigation ultimately determined that ABG did fail to reasonably accommodate MR. GANDOLFO in violation of the law and also that his termination was a result of the lack of granting his reasonable accommodation.

134.    On or about June 9, 2021, MR. GANDOLFO received both of his two Right to Sue letters from the HCRC.

## COUNT I
## DISABILITY DISCRIMINATION

135.    MR. GANDOLFO incorporates paragraphs 1 through 134 as though fully set forth herein.

136.    The disability discrimination of MR. GANDOLFO and creation of a

-15-

hostile work environment, as described aforesaid, evidences a discriminatory environment

towards MR. GANDOLFO at ABG.

137.    An employer shall not discriminate against an employee based on

disability under HRS, § 378-2 which states in pertinent part as follows:

§ 378-2:  It shall be unlawful discriminatory practice:

(1) Because of race, sex, sexual orientation, age, religion,
color, ancestry, <u>disability</u> . . .

(A) For any employer to refuse to hire or employ or to bar
or discharge from employment, or otherwise to discriminate
against any individual in compensation or in the terms, conditions,
or privileges of employment

138.    ABG's conduct as described above is a violation of HRS, § 378-2(1).

139.    These aforementioned acts and/or conduct of ABG entitles MR.

GANDOLFO to damages as provided by law. As a direct and proximate result of said unlawful

employment practices MR. GANDOLFO has suffered extreme mental anguish, outrage,

depression, great humiliation, severe anxiety about his future and his ability to support himself,

as well as painful embarrassment among his relatives and friends, damage to his good reputation,

disruption of his personal life, loss of enjoyment of the ordinary pleasures of everyday life and

other general damages in an amount which meets the minimal jurisdictional limits of this Court.

**COUNT II**
**RETALIATION**

140.    MR. GANDOLFO incorporates paragraphs 1 through 139 as though fully

set forth herein.

141.    It shall be unlawful discriminatory practice for an employer to discriminate against an individual under HRS, § 378-2(2) who "has filed a complaint . . . respecting the discriminatory practices prohibited under this part."

142.    ABG's conduct as described above is a violation of HRS, § 378-2 (2).

143.    The aforementioned acts and/or conduct of ABG entitles MR. GANDOLFO to damages as provided by law.  As a direct and proximate result of said unlawful employment practices MR. GANDOLFO has suffered extreme mental anguish, outrage, depression, great humiliation, severe anxiety about her future and her ability to support himself, as well as painful embarrassment among his relatives and friends, damage to his good reputation, disruption of his personal life, loss of enjoyment of the ordinary pleasures of everyday life and other general damages in an amount which meets the minimal jurisdictional limits of this Court.

## COUNT III
## VIOLATION OF HRS 378 PART V WHISTLEBLOWERS' PROTECTION ACT

144.    MR. GANDOLFO incorporates paragraphs 1 through 102 as though fully set forth herein.

145.    The treatment of MR. GANDOLFO, as described aforesaid, evidences retaliation against MR. GANDOLFO at ABG for reporting illegal practices at ABG.

146.    An employer shall not retaliate against an employee based on their whistleblowing under HRS, § 378-62 which states in pertinent part as follows:

§ 378-62:  An employer shall not discharge, threaten or otherwise discriminate against an employee…because:

(1)    The employee… reports or is about to report to the employer…verbally or in writing, a violation or suspected violation of:

(A)    A law, rule, ordinance, or regulation, adopted
pursuant to the law of this State, a political
subdivision of the State or the United States;

147.    ABG's conduct as described above is a violation of HRS § 378-62(1)(A).

These aforementioned acts and/or conduct of ABG entitle MR. GANDOLFO to damages as

provided by law. As a direct and proximate result of said unlawful employment practices MR.

GANDOLFO has suffered extreme mental anguish, outrage, depression, great humiliation,

severe anxiety about his future and her ability to support himself, as well as painful

embarrassment among his relatives and friends, damage to his good reputation, disruption of his

personal life, loss of enjoyment of the ordinary pleasures of everyday life and other general

damages in an amount which meets the minimal jurisdictional limits of this Court

## **PRAYER FOR RELIEF**

WHEREFORE, MR. GANDOLFO respectfully prays that this Court enter

judgment granting the following relief on all causes of action:

A.    That this Court enter a declaratory judgment that ABG have violated the

rights of MR. GANDOLFO;

B.    That this Court award MR. GANDOLFO special damages for the

aforementioned Counts;

C.    That this Court award MR. GANDOLFO compensatory damages,

proximately caused by ABG illegal conduct, including, but not limited to, general damages for

emotional distress in an amount to be proven at trial;

D.    As ABG's treatment of MR. GANDOLFO, as aforesaid, constitutes

extreme and outrageous behavior which exceeds all bounds usually tolerated by decent society.

In committing the above acts and omissions, ABG acted wantonly and/or oppressively and/or

with such malice as implies a spirit of mischief or criminal indifference to civil obligations

and/or there has been some willful misconduct that demonstrates that entire want of care which

would raise the presumption of a conscious indifference to consequences, justifying an award of

punitive or exemplary damages in an amount to be proven at trial, that this Court award MR.

GANDOLFO exemplary or punitive damages in an amount to be proven at trial;

        E.     That this Court award MR. GANDOLFO reasonable attorney's fees and

costs of suit herein as well as prejudgment and post-judgment interest;

        F.     That this Court order appropriate injunctive relief;

        G.     That this Court retain jurisdiction over this action until ABG has fully

complied with the order of this Court and that this Court require ABG to file such reports as may

be necessary to secure compliance;

        H.     That this Court award MR. GANDOLFO such other and further relief both

legal and equitable as this Court deems just, necessary and proper under the circumstances.

        DATED:  Honolulu, Hawaii, September 3, 2021.

/s/ Joseph T. Rosenbaum
ELIZABETH JUBIN FUJIWARA
JOSEPH T. ROSENBAUM
Attorneys for Plaintiff
JOSEPH GANDOLFO

IN THE CIRCUIT COURT OF THE FIFTH CIRCUIT

STATE OF HAWAII

| | |
|---|---|
| JOSEPH GANDOLFO, | ) CIVIL NO. |
| | ) (Other Civil Action) |
| Plaintiff, | ) |
| | ) DEMAND FOR JURY TRIAL |
| vs. | ) |
| | ) |
| AVIS BUDGET GROUP, INC., a foreign | ) |
| profit corporation; JOHN DOES 1-10; JANE | ) |
| DOES 1-10; DOE CORPORATIONS 1-10; | ) |
| DOE PARTNERSHIPS 1-10; DOE | ) |
| UNINCORPORATED ORGANIZATIONS | ) |
| 1-10; and DOE GOVERNMENTAL | ) |
| AGENCIES 1-10, | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all issues so triable herein.

DATED:        Honolulu, Hawaii, September 3, 2021.

/s/ Joseph T. Rosenbaum
ELIZABETH JUBIN FUJIWARA
JOSEPH T. ROSENBAUM
Attorneys for Plaintiff
JOSEPH GANDOLFO

-20-