UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| JOSEPH GANDOLFO,<br><br>                Plaintiff,<br><br>     vs.<br><br>AVIS BUDGET GROUP, INC., A<br>FOREIGN PROFIT CORPORATION,<br>JOHN DOES 1-10,  JANE DOES 1-10,<br>DOE CORPORATIONS 1-10,  DOE<br>PARTNERSHIPS 1-10,  DOE<br>UNINCORPORATED ORGANIZATIONS 1-<br>10,  DOE GOVERNMENTAL AGENCIES<br>1-10,<br><br>                Defendants. | CIV. NO. 22-00246 LEK-KJM |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR,
<u>IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT</u>**

Before this Court is Defendant Avis Budget Group,

Inc.'s ("Avis") Motion for Summary Judgment or, in the

Alternative, Partial Summary Judgment ("Motion"), filed on

November 16, 2023. [Dkt. no. 116.] On December 2, 2023, pro se

Plaintiff Joseph Gandolfo ("Gandolfo") filed his "Objection to

Defendants [sic] Motion for Summary Judgment," [dkt. no. 126,]

which has been construed as his response memorandum to the

Motion ("Response"). <u>See</u> Minute Order – EO: Court Order

Regarding Plaintiff's December 2, 2023 Filing, filed 12/4/23

(dkt. no. 127), at PageID.2073. Avis filed its reply on

December 12, 2023. [Dkt. no. 133.] On December 18, 2023,

Gandolfo filed exhibits in support of his Response ("12/18 Filing"), and he filed a supplement to his Response on December 19, 2023 ("12/19 Filing"). [Dkt. nos. 134, 136.] On December 29, 2023, Avis filed a response to the 12/18 Filing and the 12/19 Filing ("12/29 Reply"). [Dkt. no. 139.] This Court finds the Motion suitable for disposition without a hearing pursuant to Rule LR7.1(c) of the Local Rules of Practice for the United States District Court for the District of Hawaii ("Local Rules"). Avis's Motion is hereby granted in part and denied for the reasons set forth below. Specifically, the Motion is denied as to: the portion of Gandolfo's Hawai`i Revised Statutes Section 378-2(a)(1)(A) failure to accommodate claim based on alleged harassment for missing work to attend disability-related medical appointments; and the portion of Gandolfo's Hawai`i Revised Statutes Section 378-2(a)(2) based on allegedly retaliatory acts other than his termination. Avis's Motion is granted in all other respects.

**BACKGROUND**

I.   **Factual Background**

Gandolfo began working as a Rental Sales Associate ("RSA") at the Avis rental location at the airport in Lihu`e, Kaua`i on April 6, 2015. [Motion, Declaration of Christine Vo

("Vo Decl.") at ¶ 4.[1]] The RSA position is a standing position, and an RSA stands for an average of eight hours per day, with seated breaks when the RSA is not attending to a customer. [Id. at 5.]

On March 15, 2017, Gandolfo submitted to Avis a letter from Randall Juleff, M.D., F.A.C.S., of the Vein Clinics of

---

[1] Christine Vo ("Vo") is Avis's "Human Resources Business Partner-Hawaii," and she has held that position since January 2020. [Vo Decl. at ¶ 2.] She began her employment with Avis in May 2018, and she was the "Regional Recruiter-Hawaii Region" from May 2018 to January 2020. [Id.] In her current position, Vo is "responsible for overall operations of the human resources functions for Avis in Hawaii," and she is "familiar with the various personnel and operational policies and procedures affecting the employees of Avis and [has] access to employee personnel files and related records." [Id. at ¶ 3.]
Gandolfo argues this Court should not consider the Vo Declaration because he "has never met, spoken to, [or] emailed" Vo, and she was not hired by Avis until after most of the events at issue in this case occurred. [Response at 4.] Federal Rule of Civil Procedure 56(c)(4) states that a declaration in support of a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated." The Ninth Circuit has held that "[p]ersonal knowledge may be inferred from a declarant's position." In re Kaypro, 218 F.3d 1070, 1075 (9th Cir. 2000) (citing Self-Realization Fellowship Church v. Ananda Church of Self-Realization, 206 F.3d 1322, 1330 (9th Cir. 2000) ("As a corporate officer of SRF, Ananda Mata could be expected to know the identity of SRF employees and their tasks."); Barthelemy v. Air Line Pilots Ass'n, 897 F.2d 999, 1018 (9th Cir. 1990) (CEO's personal knowledge of various corporate activities could be presumed)). Vo's personal knowledge of information from employee records, including hiring dates and termination dates and the nature of positions within the Avis organization can be inferred from Vo's position. This Court concludes that the Vo Declaration satisfies the requirements of Rule 56(c)(4) and overrules Gandolfo's objections to the Vo Declaration.

Hawaii ("3/15/17 Letter"). [Motion, Declaration of Aiko Bunn in Support of Defendant's Motion for Summary Judgment or, in the Alternative Partial Summary Judgment ("Bunn Decl.") at ¶ 3 & Exh. 1 (3/15/17 Letter).[2]] Dr. Juleff stated Gandolfo had vein procedures on his lower legs from January 9, 2017 to January 11, 2017, and Dr. Juleff requested accommodations that were necessary to complete Gandolfo's treatment:

> After his vein procedures, he has to wear the compression stocking as often as needed. It is very important that he wears the compression stockings and to stand and walk as much as it is tolerated, after a procedure to allow proper closure of the treated veins. He should be allowed to wear nonconfining foot wear for the next 2 months, due to difficulties healing from his recent procedures done in our office. During this period of time he also should be allowed to park closer to the office.

---

[2] Aiko Bunn ("Bunn") is Avis's Vice President of Employee and Labor Relations and has held various human resources positions within Avis since January 2003. [Bunn Decl. at ¶¶ 1-2.] Bunn is "familiar with the various personnel and operational policies and procedures affecting the employees of Avis, including leaves of absence and accommodations for disabilities," and Bunn has "access to records kept in the ordinary course of business which include the personnel file and other information regarding the employment of Plaintiff Joseph Gandolfo." [Id. at ¶ 2.]

As with the Vo Declaration, Gandolfo argues this Court should not consider the Bunn Declaration because he has never interacted with Bunn, and therefore Bunn has no personal knowledge of the events at issue in this case. [Response at 4.] As with Vo, Bunn's personal knowledge of information from employee records can be inferred from Bunn's position. This Court concludes that the Bunn Declaration satisfies the requirements of Rule 56(c)(4) and overrules Gandolfo's objections to the Bunn Declaration.

[Bunn Decl., Exh. 1 (3/15/17 Letter).]

In response to the 3/15/17 Letter, Avis allowed Gandolfo to wear footwear that did not comply with Avis's dress code for two months, and Gandolfo was allowed to use the managers' parking lot, which was next to the rental building, for at least two months. No accommodation was necessary for Gandolfo to wear compression socks because the dress code did not prohibit wearing compression socks. [Bunn Decl. at ¶¶ 4-6.] Avis also purchased, at Gandolfo's request, a chair that he could use behind the counter. Id. at ¶ 8; see also id., Exh. 2 (email dated 4/19/19 from Cesar Acoba, District Manager ("Acoba"), Avis Budget Group, to Gregory Kilbreath ("Kilbreath"), describing chairs purchased to accommodate Gandolfo).[3]

Gandolfo's parking accommodation lasted for more than two months after he submitted the 3/15/17 Letter, even though Gandolfo did not submit any further documentation of a continuing medical need for closer parking. [Bunn Decl. at ¶ 6.] However, near the end of 2017, all Avis employees at the Lihu`e

---

[3] Although Kilbreath's email address indicates that his name is Gregory Kilbreath, he apparently goes by the name "Scott Kilbreath." See generally Bunn Decl., Exh. 2. During the relevant period, Kilbreath was Avis's Human Resources Business Partner for Hawai`i. See id. at PageID.1901 (8/15/18 email from Kilbreath to Suzanne Slawski forwarding Acoba's 4/19/18 email).

Airport – including Gandolfo – were informed that, as of January 1, 2018, only managers would be allowed to use the parking lot next to the rental building.[4] Thus, Gandolfo - who was not a manager - was no longer permitted to park in that parking lot. [Id. at ¶¶ 9-10.] At some point, Gandolfo requested that he be allowed to park in a handicap parking stall or in another space in the parking lot for the Avis rental location. On May 7, 2018, Kilbreath informed Gandolfo by text message that Gandolfo's request was being granted, subject to reevaluation after sixty days. See id. at ¶ 11; id., Exh. 3 (texted dated 5/7/18 from "Scott Kilbreath HR"). Gandolfo submitted a letter from Kilbreath, dated May 11, 2018, informing Gandolfo that his request for an accommodation was being granted ("5/11/18 Letter"). [12/18 Filing, Exh. J-4.]

Gandolfo's request for continuous Family Medical Leave Act ("FMLA") leave from January 14, 2018 to January 18, 2018 was approved.[5] He was also approved for intermittent FMLA leave consisting of a one-day-per-week leave of absence for the period from January 31, 2018 to July 30, 2018. But, at some point

---

[4] Gandolfo submitted a copy of the memorandum regarding "On The Lot Parking" in support of his Response. [12/18 Filing, Exh. J-1.]

[5] Bunn states that "Gandolfo's FMLA qualifying leaves of absence were administered by Matrix Absence Management ("Matrix"), a third party administrator hired by ABG to coordinate leave benefits." [Bunn Decl. at ¶ 12.]

during that period, Gandolfo was approved for continuous FLMA leave from March 31, 2018 to April 11, 2018. [Bunn Decl. at ¶ 13.]

On March 29, 2018, Gandolfo made a complaint through Avis's Ethics Hotline that his managers were not allowing him to take time off for an April 4, 2018 medical appointment on O`ahu. Avis investigated this disability discrimination complaint and were not able to substantiate Gandolfo's complaint. [Id. a ¶¶ 14-15.]

On May 23, 2018, Avis granted Gandolfo's request for continuous FLMA leave. His anticipated return-to-work date was July 24, 2018. [Id. at ¶ 16.] On June 22, 2018, Avis sent Gandolfo a letter informing him that the twelve weeks of leave that he was entitled to under the FLMA would be exhausted as of July 22, 2018, and therefore his request for FLMA leave on July 23, 2018 was denied ("6/22/18 Letter"). Id. at ¶ 17; see also id., Exh. 4 (6/22/18 Letter).

Gandolfo was unable to return to work on July 24, 2018, and he requested that his leave of absence be extended to January 25, 2019. [Bunn Decl. at ¶ 18.] Gandolfo submitted a facsimile transmission to Dr. Sashi Braga from "IT" requesting:

> 1)   All office notes and procedures reports from
> June, 2018 through the present, including most
> recent visit

2)    Current treatment plan and estimated date
patient may return to work, will there be
restrictions

3)    Please complete the Progress Report.

[12/18 Filing, Exh. J-6A at PageID.2191.] Included within

Exhibit J-6A is a Progress Report form that appears to have been

completed by Dr. Braga and signed on July, 25, 2018. [Id. at

PageID.2193.] It notes an anticipated return-to-work date of

January 25, 2019. [Id.] Gandolfo also submitted a letter

addressed to him, dated September 18, 2018, from Shiella Pillos,

TDI Claims Representative, John Mullen & Company. [12/18 Filing,

Exh. J-6B.] The letter states:

We represent the temporary disability insurance
carrier of your employer.

According to our file, your doctor indicated your
return-to-work date as 1/25/19. Please have your
doctor complete the enclosed Attending Physician
Statement and return it to us as soon as
possible.

[Id.]

Gandolfo's request to extend his leave to January 25,

2019 was granted in part, and his leave of absence was extended

to September 30, 2018. Gandolfo was informed that no further

extensions would be granted without updated information from his

8

healthcare provider.[6] [Bunn Decl. at ¶¶ 18-19.] On September 26, 2018, Gandolfo was notified that his short-term disability ("STD") benefits were extended to November 20, 2018, but that the maximum period for STD benefits would be reached as of that date. [Id. at ¶ 20.]

According to Bunn, Avis was never provided any information from Gandolfo's healthcare provider to support the requested return-to-work date of January 25, 2019. [Id. at ¶ 21.]

Avis sent Gandolfo a letter dated November 13, 2018, informing him that all of his available leave benefits would be exhausted as of November 27, 2018 and that he would be terminated as of November 28, 2018 unless he was able to return to work ("11/13/18 Letter"). [Bunn Decl. at ¶ 22; id., Exh. 5 (11/13/18 Letter).] The 11/13/18 Letter stated: "While Avis Budget Group, LLC has a very generous program to assist employees who are unable to work for a period of time, it is not

---

[6] Gandolfo submitted an email, dated July 31, 2018, to him from Donna Dicostanzo, Matrix Senior Integrated Claims Examiner. [12/18 Filing, Exh. J-6c.] It states, in relevant part:

> Your claim has been reviewed by our clinical staff and based on the information provided by your health care provider it was determined that your leave will be extended through 09/30/18. If you are not released to return to work on 10/01/18, we will reach out to your provider for additional medical documentation.

[Id.]

possible to give employees open-ended leave." [Bunn Decl., Exh. 5.]

Avis terminated Gandolfo's employment through a letter dated December 13, 2018.[7] The termination was effective as of December 14, 2018. Avis reiterated that it could not allow an open-ended leave of absence and that Gandolfo had not advised Avis when he would be able to return to work. Avis stated Gandolfo could apply for any Avis position that he was qualified for, after he was medically able to return to work. [Bunn Decl. at ¶ 24.] By the time of his termination, Avis had allowed Gandolfo more than thirty-one weeks of leave. [Id. at ¶ 23.]

## II.  **Procedural Background**

On June 13, 2018, Gandolfo submitted a Charge of Discrimination to the Equal Employment Opportunity Commission ("EEOC"), which was assigned the number 486-2018-00309 ("6/13/18 Charge"). It alleged sex and disability discrimination and retaliation from April 29, 2017 to May 22, 2018. [Vo Decl., Exh. 1 (6/13/18 Charge) at PageID.1888.] The 6/13/18 Charge describes the following incidents:

> In late April 2017, I developed disability complications and my doctor recommended that I undergo an immediate medical assessment. The day before my appointment, I obtained approval from a manager to leave one (1) hour early from work. However, the following day, I was harassed by

---

[7] Gandolfo submitted a copy of the December 13, 2018 letter. [12/18 Filing, Exh. J-9.]

three supervisors who told me that I could not
attend the appointment. I was also informed if I
left it would be considered job abandonment and
would be subjected to disciplinary action,
including possible termination. Due to severity
of my medical condition, I went to my scheduled
appointment and later filed an internal
harassment complaint with [Avis]. However, I do
not believe [Avis] properly addressed the
incident. I was also harassed about attending my
medical appointment by General Manager Cesar
Acoba. After I informed Acoba that I filed an
internal complaint, he changed his demeanor and
apologized. Nevertheless, I continued to be
subjected to unlawful harassment and retaliation
by management and non-management employees.

In May 2017, I was out from work due to
undergoing an additional surgery for my
disability. However, I continued to experience
more complications that adversely affected my
personal mobility. In September 2017, my car was
vandalized by a male coworker. Within a week, a
picture of male genitalia was drawn on my car
back window. I complained about vandalism and the
unlawful harassment to [Avis] to no avail.
Rather, [Avis] blamed me for the incidents and
took away my parking accommodation.

In January 2018, I obtained approval for
intermittent FMLA leave for my disability. In
early March 2018, I scheduled an appointment with
a medical specialist on Oahu for April 4, 2018. I
obtained the necessary leave paperwork to
complete and submit to my supervisor Greg
Alejandro for approval. On March 28, 2018, I
followed up on my leave request with Alejandro.
At that time, Alejandro denied that I submitted
any leave paperwork and told me that I could not
go to my medical appointment. I objected to
Alejandros [sic] assertion because it was
blatantly false. Acoba also threatened me with
adverse actions (including discharge) if I didn't
cancel my appointment. Nevertheless, I went to my
scheduled appointment and contacted Human
Resources again to complain about further
retaliatory harassment.

Upon my return to work, I provided [Avis] with
medical documentation with my doctors recommended
accommodations. [Avis] failed to provide one of
the requested accommodations (i.e. chair) in a
timely and effective manner. On or about May 22,
2018, Alejandro told me that I failed to submit
documentation about my disability status in April
2018. When I asked him to give me the information
so I could follow up with Matrix, he refused.
Alejandro also said that he deleted the emails
which he purported received weeks ago, but
'forgot' about them. Again, I complained to
[Avis's] Human Resources about harassment though
I do not believe it is an effective recourse. Due
to my hostile work environment and disability, I
went out on leave on May 23, 2018 and have not
returned to work.

I believe [Avis] discriminated against me because
of disability in violation of the Americans with
Disabilities Act of 1990, as amended. I also
believe [Avis] discriminated against me because
of my sex-sexual orientation (gay male) in
violation of Title VII of the Civil Rights Act of
1964, as amended. Finally, I believe [Avis]
retaliated against me for engaging in protected
activity.

[Id. at PageID.1888-89.[8]]

On November 15, 2018, Gandolfo submitted a Charge of

Discrimination to the EEOC, which was assigned the number 486-

2019-00077 ("11/15/18 Charge"). It alleged disability

discrimination and retaliation from November 13 to 14, 2018. [Vo

---

[8] For purposes of Avis's Motion, this Court liberally
construes Gandolfo's statement in his 6/13/18 Charge as a
declaration because he signed it under penalty of perjury. See
Vo Decl., Exh. 1 (6/13/18 Charge) at PageID.1888 ("I declare
under penalty of perjury that the above is true and correct.").

Decl., Exh. 2 (11/15/18 Charge) at PageID.1892.] The 11/15/18

Charge describes the following incidents:

> In June 2018, I filed an Initial EEOC
> discrimination against [Avis] which is currently
> under investigation. While on medical leave, I
> had several surgeries and developed complications
> which prevented me from returning to work. In
> September 2018, I provided [Avis] medical
> documentation indicating that I would need about
> six months of additional leave for treatment of
> my disability.
>
> On November 14, 2018, [Avis] issued me a letter
> citing that I exhaust all leave benefits on
> November 27, 2018. Moreover, if I am unable to
> return to work, my employment will be terminated
> effective November 28, 2018.
>
> I believe [Avis] retaliated against me because of
> my disability and for engaging in protected
> activity in violation of the Americans with
> Disabilities Act of 1990 ('ADA" [sic]) and the
> Americans with Disabilities Act Amendments Act of
> 2008 ("ADAAAA"), as amended.

[Id. at PageID.1892-93.[9]]

The EEOC issued a Letter of Determination for both the

6/13/18 Charge and the 11/15/18 Charge; both were dated

February 21, 2021. [Vo Decl., Exh. 3 at PageID.1895-96 (Letter

of Determination for the 6/13/18 Charge ("6/13/18 Charge

Determination")); id. at PageID.1897-98 (Letter of Determination

for the 11/15/18 Charge ("6/13/18 Charge Determination")).] As

to the 6/13/18 Charge, the EEOC "determined there is reasonable

---

[9] Gandolfo's statement in the 11/15/18 Charge is also
liberally construed as a declaration. See Vo Decl., Exh. 2 at
PageID.1892.

cause to believe that [Gandolfo] was denied an effective reasonable accommodation for his disability on a consistent basis in violation of the ADA." [Vo Decl., Exh. 3 at PageID.1895.] As to the 11/15/18 Charge, the EEOC "determined there is reasonable cause to believe that [Gandolfo] was denied a reasonable accommodation which resulted in him being discharged because of his disability and in retaliation for participating in protected activity in violation of the ADA." [Id. at PageID.1897.] Neither determination included specific information about the basis for the EEOC's finding. See generally Vo Decl., Exh. 3. The EEOC invited Avis to participate in conciliation discussions and stated an investigator would be contacting Avis to begin the discussions. [Id. at PageID.1896, PageID.1898.] The record does not contain evidence regarding any attempted conciliation discussions or any other actions by the EEOC after the Letters of Determination.

Gandolfo filed his Complaint in the instant case on September 3, 2021 in state court,[10] and Avis removed it to this district court on June 3, 2022, based on diversity jurisdiction.

---

[10] At the time he filed the Complaint, Gandolfo was represented by counsel, Joseph Rosenbaum, Esq., and Elizabeth Jubin Fujiwara, Esq. See Iriye Removal Decl., Exh. A (Complaint) at pg. 1. On June 12, 2023, Gandolfo's counsel filed a motion to withdraw. [Dkt. no. 45.] The magistrate judge orally granted counsel's motion at a hearing on July 6, 2023, and Gandolfo has been proceeding pro se since that time. See Minutes, filed 7/6/23 (dkt. no. 57).

See Defendant Avis Budget Group, Inc.'s Notice of Removal to
Federal Court ("Notice of Removal"), filed 6/3/22 (dkt. no. 1),
at ¶ 1; Notice of Removal, Decl. of Judy M. Iriye ("Iriye
Removal Decl."), Exh. A (Complaint). The Complaint asserts the
following claims: disability discrimination, in violation of
Hawai`i Revised Statutes Section 378-2(a)(1)(A) ("Count I");
retaliation, in violation of Section 378-2(a)(2) ("Count II");
and retaliation, in violation of the Hawai`i Whistleblowers'
Protection Act ("HWPA"), Hawai`i Revised Statutes Chapter 378,
Part V ("Count III").

        In the instant Motion, Avis argues it is entitled to
summary judgment as to all of Gandolfo's claims and as to
Gandolfo's request for punitive damages. Avis contends that:
some portions of Gandolfo's disability discrimination claims and
his HWPA claim are time barred; and the claims that are not
time-barred fail as a matter of law because Gandolfo is not a
qualified person with a disability and he was not terminated in
retaliation for his protected activity.

**DISCUSSION**

## I.   Failure to Respond to Admissions

        Avis served a Request for Admissions on Gandolfo,
through his counsel, on March 30, 2023. See Motion, Declaration
of Judy M. Iriye in Support of Defendant's Motion for Summary
Judgment or, in the Alternative Partial Summary Judgment ("Iriye

Motion Decl.") at ¶ 2; id., Exh. 1 (Defendant Avis Budge Group, Inc.'s First Set of Request for Admissions to Plaintiff ("RFA")). Pursuant to Federal Rule of Civil Procedure 36(a)(3), Gandolfo's responses were due by April 29, 2023.

On April 27, 2023, Gandolfo's counsel requested an extension to May 26, 2023, and Avis's counsel agreed. See Iriye Motion Decl. at ¶¶ 3-4. Gandolfo did not respond to the RFA by the May 26, 2023 deadline but, after Gandolfo's counsel filed their motion to withdraw, Avis's counsel decided to wait for the motion to withdraw to be resolved before pursuing the discovery responses. [Id. at ¶¶ 5-6.]

On July 7, 2023, Avis's counsel sent Gandolfo an email asking that he provide his responses to all outstanding discovery requests by July 19, 2023. [Id., Exh. 2 at PageID.1931 (email from Judy Iriye to Gandolfo, dated 7/7/23 at 2:23 p.m.).] Gandolfo did not provide his discovery responses, including the RFA, by the July 19, 2023 deadline. [Iriye Motion Decl. at ¶ 6.] On July 26, 2023, Avis's counsel sent Gandolfo an email stating that, although he did not make a timely request for an extension, Avis would allow him to respond to the outstanding interrogatories and requests for production of documents by August 9, 2023. [Id., Exh. 3 at PageID.1935 (email from Judy Iriye to Gandolfo, dated 7/26/23 at 1:50 p.m.).] As of

November 15, 2023, Gandolfo had not responded to the RFA. [Iriye

Motion Decl. at ¶ 7.]

> Federal Rule of Civil Procedure 36(a)(3) states:

> A matter is admitted unless, within 30 days after
> being served, the party to whom the request is
> directed serves on the requesting party a written
> answer or objection addressed to the matter and
> signed by the party or its attorney. A shorter or
> longer time for responding may be stipulated to
> under Rule 29 or be ordered by the court.

Rule 36(b) states, in relevant part:

> A matter admitted under this rule is conclusively
> established unless the court, on motion, permits
> the admission to be withdrawn or amended. Subject
> to Rule 16(e), the court may permit withdrawal or
> amendment if it would promote the presentation of
> the merits of the action and if the court is not
> persuaded that it would prejudice the requesting
> party in maintaining or defending the action on
> the merits.

"Unanswered requests for admissions may be relied on as the

basis for granting summary judgment." Conlon v. United States,

474 F.3d 616, 621 (9th Cir. 2007) (citation omitted).

Avis relies on Gandolfo's admission that, since the

date of his termination, he has not been medically released to

work, has not been employed, nor has he sought employment. See

Motion, Mem. in Supp. at 6; see also Iriye Motion Decl., Exh. 1

(RFA) at 3-4. As discussed infra, these admissions would

preclude Gandolfo from establishing that he was qualified for

the RSA position at the time of his termination. The Ninth

Circuit has held that "[t]he first half of the test in

17

Rule 36(b) is satisfied when upholding the admissions would practically eliminate any presentation of the merits of the case." Conlon, 474 F.3d at 622 (quotation marks and citation omitted). Further, Avis has not presented any evidence suggesting that it would be prejudiced if Gandolfo were allowed to withdraw his admissions and respond to the RFA. Nevertheless, this Court must allow Gandolfo's admissions to stand because Gandolfo has not requested to withdraw or amend his admissions, nor do his filings responding to Avis's Motion contain any statement that could be liberally construed as a request to withdraw or amend his admissions.[11] Moreover, based on the statements that Gandolfo has made in other filings in this case, it is unclear whether he would be able amend his admissions to state that, at the time of his termination, he would have been able to return to work if allowed reasonable accommodations, including his requested extension of his leave of absence to January 25, 2019. See "Emergency Motion for continuance," filed 11/15/23 (dkt. no. 114), at 2 (stating he has "a known[n] **permanent** physical disability" (emphasis added)).

---

[11] Because Gandolfo is proceeding pro se, his filings must be liberally construed. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).

In light of the foregoing, the requests for admissions in Avis's RFA are deemed admitted, and this Court will consider the admissions in ruling on Avis's Motion.

## II.   **Timeliness of Gandolfo's Claims**

In considering the merits of Avis's Motion, this Court first turns to Avis's argument that some of Gandolfo's claims are time-barred.

### A.   **Section 378-2 Claims**

Gandolfo brings Counts I and II pursuant to Hawai`i Revised Statutes Section 378-2. This district court has noted:

> Chapter 368 governs the procedure by which administrative complaints of discrimination under Part I of chapter 378 are filed. See Haw. Rev. Stat. §§ 378-4; 368-11. In particular, section 368-11 requires complaints alleging unlawful discrimination in violation of part I of chapter 378, sections 378-1 to 378-[6] of Hawaii Revised Statutes, to be filed with the HCRC within 180 days of either the occurrence of the alleged discrimination or the last occurrence of a pattern of ongoing discriminatory practice. See Sam Teague, Ltd. v. Hawai`i Civil Rights Comm'n, 89 Hawai`i 269, 276, 971 P.2d 1104, 1111 (1999).

You v. Longs Drugs Stores Cal., LLC, 937 F. Supp. 2d 1237, 1249 (D. Hawai`i 2013).[12]

> The Hawaii Supreme Court treats [the 180-day filing period] as a statute of limitations period. Sam Teague, Ltd. v. Haw. Civ. Rts. Comm'n, 971 P.2d 1104, 1112 (Haw. 1999).

---

[12] You was affirmed on appeal. 594 F. App'x 438 (9th Cir. 2015).

> Hawaii has a worksharing agreement with the
> U.S. Equal Employment Opportunity Commission and
> administrative claims with the U.S. Equal
> Employment Opportunity Commission may be dual-
> filed with the Hawaii Civil Rights Commission.
> U.S. E.E.O.C. v. NCL Am. Inc., 504 F.Supp.2d
> 1008, 1009-10 (D. Haw. 2007).
>
> A Charge of Discrimination filed with the
> U.S. Equal Employment Opportunity Commission is
> insufficient to confer the federal District Court
> with jurisdiction over a Hawaii state law claim
> of employment discrimination where the Charge of
> Discrimination is untimely pursuant to Hawaii
> state law. Armijo v. Costco Wholesale Warhouse
> [sic], Inc., Civ. No. 19-00484 ACK-RT, 2021 WL
> 1240622, *4 (D. Haw. Apr. 2, 2021).

Hobro v. United Airlines, Inc., CIV. NO. 21-00322 HG-KJM, 2022

WL 4468518, at *5 (D. Hawai`i Sept. 26, 2022).

Count I is based upon the following factual

allegations: an incident in April 2017 when Gandolfo was

harassed before and after leaving work early for an urgent

medical appointment; [Complaint at ¶¶ 15-31;[13]] an incident in

September 2017 when a coworker blocked Gandolfo's car in its

parking spot at the Avis parking lot; [id. at ¶¶ 39-40;] a

September 11, 2017 incident and a September 18, 2017 incident

---

[13] This Court cites the Complaint only to note the scope of
the allegations that form the basis of Gandolfo's claims. For
purposes of Avis's Motion, if Avis "has carried its burden of
production, [and Gandolfo] must produce evidence in response[;]
. . . . he cannot defeat summary judgment with allegations in
the complaint . . . ." See Hernandez v. Spacelabs Med. Inc., 343
F.3d 1107, 1112 (9th Cir. 2003) (some citations omitted) (citing
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-52, 106 S.
Ct. 2505, 91 L. Ed. 2d 202 (1986)).

when Gandolfo's car was vandalized while it was in the Avis
parking lot; [id. at ¶¶ 42, 46;] the loss of his parking
accommodation, which Gandolfo was notified about in October
2017; [id. at ¶ 57;] an incident in March 2018 and April 2018
when Gandolfo was told he was not allowed to use leave for an
April 4, 2018 medical appointment and that he would be
disciplined unless he rescheduled the appointment; [id. at
¶¶ 81-106;] the failure to provide the chair that Gandolfo
requested as a reasonable accommodation "in a timely and
effective manner"; [id. at ¶ 108;] a May 22, 2018 incident when
Gandolfo was accused of failing to submit required documentation
for his April 2018 disability leave; [id. at ¶¶ 109-14;] and his
termination on December 14, 2018, even though he submitted
documentation from his doctor stating required medical leave
until January 25, 2019, [id. at ¶¶ 118-31].

        The portion of Count I based upon Gandolfo's
termination is timely because he filed it within a week after
being informed that he would be terminated unless he returned to
work by November 28, 2018. See Bunn Decl., Exh. 5 (11/13/18
Letter); Vo Decl., Exh. 2 (11/15/18 Charge). The portions of
Count I based upon incidents that occurred within 180 days prior
to the filing of Gandolfo's 6/13/18 Charge are also timely. See
Vo Decl., Exh. 1 (6/13/18 Charge). Gandolfo argues all of the
incidents are part of a pattern of conduct by Avis that created

a hostile work environment, which shows there was "a discriminatory environment towards [him] at [Avis]." See Iriye Removal Decl., Exh. A (Complaint) at ¶ 136. His position is that he can rely on incidents that occurred more than 180 days before the filing of the 6/13/18 Charge because all of the incidents were part of "a pattern of ongoing discriminatory practice." See § 368-11(c)(2). In other words, he argues all of the incidents were part of a continuing practice of disability discrimination. Thus, in determining whether the Avis's actions were part of a pattern of an ongoing practice of discrimination, this Court will look to case law regarding hostile work environment claims for guidance.

This Court concludes that

> the standard set forth by the United States
> Supreme Court in National Railroad Passenger
> Corp. v. Morgan, 536 U.S. 101, 116 (2002),
> applies, see, e.g., Kosegarten v. Dep't of the
> Prosecuting Attorney, 892 F. Supp. 2d 1245, 1261
> (D. Hawai`i 2012); White v. Pac. Media Grp.,
> Inc., 322 F. Supp. 2d 1101, 1112-13 (D. Hawai`i
> 2004), and to find a "continuing violation" the
> Court must determine whether Plaintiff has
> [established] a "series of separate acts that
> collectively constitute one 'unlawful employment
> practice.'" See Morgan, 536 U.S. at 117 (quoting
> 42 U.S.C. § 2000e-5(e)(1)).[14]

---

[14] Case law regarding Title VII is instructive here because, in interpreting Section 378-2, the Hawai`i Supreme Court has looked "to interpretations of analogous federal laws by the federal courts for guidance," Schefke v. Reliable Collection Agency, Ltd., 96 Hawai`i 408, 425, 32 P.3d 52, 69 (2001) (citations omitted), and has, in some instances, adopted the
(. . . continued)

See Hillhouse v. Hawaii Behavioral Health, LLC, Civil No. 14-
00155 LEK-BMK, 2014 WL 5528239, at *3 (D. Hawai`i Oct. 31,
2014). In Morgan, the Supreme Court stated,

> "[w]hen the workplace is permeated with
> 'discriminatory intimidation, ridicule, and
> insult,' that is 'sufficiently severe or
> pervasive to alter the conditions of the victim's
> employment and create an abusive working
> environment,' Title VII is violated." Harris [v.
> Forklift Sys., Inc.], 510 U.S. [17,] 21 [(1993)]
> (citations omitted).
>
> In determining whether an actionable hostile
> work environment claim exists, we look to "all
> the circumstances," including "the frequency of
> the discriminatory conduct; its severity; whether
> it is physically threatening or humiliating, or a
> mere offensive utterance; and whether it
> unreasonably interferes with an employee's work
> performance." Id., at 23. . . .

536 U.S. at 116.

---

same test for a Section 378-2 claim as the test used by federal
courts for the similar Title VII claim, id. at 426, 32 P.3d at
70 (adopting test for retaliation claim); see also Jackson v.
Foodland Super Market, Ltd., 958 F. Supp. 2d 1133, 1139 (D.
Hawai`i 2013) ("A claim of discrimination under HRS Chapter 378
is governed by the same test used by the federal courts in Title
VII cases." (citing Schefke v. Reliable Collection Agency, Ltd.,
96 Hawai`i 408, 32 P.3d 52, 69-70 (2001))).
    In addition, "the ADA claim framework is used to analyze
§ 378-2 claims." Bach v. Cmty. Ties of Am., Inc., CIV. NO. 18-
00103 LEK-WRP, 2019 WL 6054675, at *5 (D. Hawai`i Nov. 15,
2019), aff'd, 840 F. App'x 182 (9th Cir. 2021); see also Morris
v. Verizon Fed., Inc., Civ. No. 15-00261 JMS-KSC, 2017 WL
3379176, at *10 n.7 (D. Hawai`i Aug. 3, 2017) ("Because the
Hawaii statutes are textually similar to the ADA, Hawaii courts
adopt the federal analysis of ADA claims." (citing French v.
Haw. Pizza Hut, Inc., 99 P.3d 1046, 1051 (Haw. 2004))).

### 1.   __April 2017 Incident__

Based on the descriptions of the incidents in his 6/13/18 Charge, the April 2017 incident when Gandolfo was harassed about leaving work early to go to a medical appointment is similar to the incidents in March and April 2018 when he was told that he would be disciplined if he went to his April 4, 2018 medical appointment and to the May 22, 2018 incident when he was accused of failing to submit proper documentation for his April 2018 leave. Further, threatening Gandolfo with adverse employment actions if he went to medical appointments is "sufficiently severe . . . to alter the conditions of [Gandolfo's] employment and create an abusive working environment." See Harris, 510 U.S. at 21 (citation and internal quotation marks omitted). Viewing the record in the light most favorable to Gandolfo,[15] this Court finds that there is a genuine issue of material fact as to whether the April 2017 incident was part of "a pattern of ongoing discriminatory practice" that continued into the period 180 days before Gandolfo filed the 6/13/18 Charge. Therefore, to the extent that the Motion seeks summary judgment as to the portion of Count I based on the April 2017 incident on the ground that it is untimely, the Motion is

---

[15] In considering Avis's Motion, this Court must view the record in the light most favorable to Gandolfo as the nonmoving party. See Harris v. Cnty. of Orange, 17 F.4th 849, 855 (9th Cir. 2021).

denied. <u>See</u> Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

### 2.  <u>September 2017 Incidents</u>

Based on his description of the September 2017 incidents in his 6/13/18 Charge, this Court finds that they are not similar to the pattern of ongoing disability discrimination practices that Gandolfo described in the charge. The second September 2017 incident appears to be related to the sex/sexual orientation discrimination claim that Gandolfo alleged in the 6/13/18 Charge but that he did not plead in his Complaint in the instant case. <u>See</u> Vo Decl., Exh. 1 (6/13/18 Charge) at PageID.1889. There is no evidence in the summary judgment record which suggests that the first September 2017 incident is related to the pattern of ongoing disability discrimination practices that Gandolfo alleged in the 6/13/18 Charge. Even viewing the record in the light most favorable to Gandolfo, there is no genuine dispute of material fact as to the September 2017 incidents, and this Court concludes, as a matter of law, that they are discrete incidents. To the extent that Gandolfo is attempting to assert Section 378-2 claims based on the September 2017 incidents, those claims are time-barred because Gandolfo failed to file a charge of discrimination within 180

25

days of the September 2017 incidents. <u>See</u> <u>Sam Teague</u>, 89 Hawai`i
at 276, 971 P.2d at 1111. Avis is therefore entitled to summary
judgment as to the portions of Count I based on the September
2017 incidents.

### 3. **Other Incidents**

Avis does not seek summary judgment based on time-bar
as to the other allegations that form the basis of Count I. This
Court therefore assumes, for purposes of the instant Motion,
that the remaining incidents that are alleged in the Complaint
and that have been established in the record before this Court
on summary judgment either: occurred within the 180-day period
before the filing of the 6/13/18 Charge or the 180-day period
before the filing of the 11/15/18 Charge; or are part of the
alleged ongoing pattern of disability discrimination.

### B. **Section 378-2 Retaliation Claim**

Similarly, Avis does not seek summary judgment based
on time-bar as to Count II, Gandolfo's Section 378-2 retaliation
claim. This Court therefore assumes, for purposes of the instant
Motion, that the allegedly retaliatory conduct either: occurred
within the 180-day period before the filing of the 6/13/18
Charge or the 180-day period before the filing of the 11/15/18
Charge; or was part of an ongoing pattern of retaliation.

C.   **HWPA Claim**

There is no administrative exhaustion requirement for HWPA claims. See Fecher v. Islands Hospice, Inc., Case No. 23-cv-00130-DKW-WRP, 2023 WL 3467113, at *2 (D. Hawai`i May 15, 2023). However, a HWPA claim must be filed within two years after the alleged violation occurs. See Haw. Rev. Stat. § 378-63(a). A HWPA violation occurs at the time of each allegedly retaliatory act. See, e.g., Lopes v. Kapiolani Med. Ctr. for Women & Children, 410 F. Supp. 2d 939, 952 (D. Hawai`i 2005). The last act of retaliation alleged in the Complaint is Gandolfo's termination, which took effect on December 14, 2018, and which he was notified of by letter on December 13, 2018. See Bunn Decl. at ¶ 24; 12/18 Filing, Exh. J-9 (December 13, 2018 letter). Gandolfo, however, did not file this action until September 3, 2021, see Iriye Removal Decl., Exh. A (Complaint) at pg. 1, which was more than two years after his termination. Avis therefore argues Count III, Gandolfo's HWPA claim, is time-barred.

Gandolfo has not argued that the statute of limitations should be tolled, but, even if he made that argument, this Court would conclude that tolling does not apply.

Hawaii has adopted federal equitable tolling principles:

In order to toll a statute of limitations for a complaint filed after its expiration,

27

> a plaintiff must demonstrate "(1) that he
> . . . has been pursuing his right
> diligently, and (2) that some extraordinary
> circumstance stood in his way." Felter v.
> Norton, 412 F. Supp. 2d 118, 126 (D.D.C.
> 2006) (citing Pace v. DiGuglielmo, 544 U.S.
> 408, 417, 125 S. Ct. 1807, 1814, 161 L.Ed.2d
> 669 (2005); Zerilli-Edelglass v. N.Y. City
> Transit Auth., 333 F.3d 74, 80-81 (2d Cir.
> 2003)). Extraordinary circumstances are
> circumstances that are beyond the control of
> the complainant and make it impossible to
> file a complaint within the statute of
> limitations. Id. (citing United States v.
> Cicero, 214 F.3d 199, 203 (D.C. Cir. 2000)).
>
> Office of Hawaiian Affairs v. State, 110 Haw.
> 338, 360, 133 P.3d 767, 789 (2006). See also
> Reyes v. HSBC Bank USA, Nat'l Ass'n, 135 Haw.
> 407, 2015 WL 3476371, at *6 (Haw. Ct. App.
> May 29, 2015) (applying federal equitable tolling
> principles to fraudulent concealment); Paco v.
> Myers, 143 Haw. 330, 2018 WL 6177430, at *2 (Haw.
> Ct. App. Nov. 27, 2018). This test "is a very
> high bar, and is reserved for rare cases." Yow
> Ming Yeh v. Martel, 751 F.3d 1075, 1077 (9th Cir.
> 2014).

Chun v. City & Cnty. of Honolulu, Civ. No. 18-00131 JMS-RT, 2020 WL 3965943, at *3 (D. Hawai`i July 13, 2020) (footnote omitted).[16]

Gandolfo has not identified any evidence suggesting that he diligently pursued his HWPA claim during the period between his termination and the filing of the Complaint, nor has he identified any evidence suggesting that an extraordinary circumstance prevented him from timely filing his HWPA claim.

---

[16] Chun was affirmed on appeal. No. 20-16558, 2022 WL 501586 (9th Cir. Feb. 18, 2022).

28

This Court therefore finds that there are no genuine issues of material fact and concludes that, as a matter of law, Gandolfo's HWPA claim is untimely and tolling does not apply. Avis is entitled to summary judgment as to Count III, and the Motion is granted as to that claim.

## III. <u>Disability Discrimination</u>

This district court has stated, in the context of ADA claims:

"The ADA prohibits an employer from discriminating 'against a qualified individual with a disability because of the disability.'" <u>Nunes v. Wal-Mart Stores, Inc.</u>, 164 F.3d 1243, 1246 (9th Cir. 1999) (quoting 42 U.S.C. § 12112(a)). To establish a prima facie case of discrimination under the ADA, whether based on termination or a failure to accommodate, a plaintiff must demonstrate that "(1) he is disabled within the meaning of the ADA; (2) he is a qualified individual able to perform the essential functions of the job with reasonable accommodation; and (3) he suffered an adverse employment action because of his disability." <u>Allen v. Pac. Bell</u>, 348 F.3d 1113, 1114 (9th Cir. 2003) (failure to accommodate); <u>see also, e.g.,</u> <u>Nunies v. HIE Holdings, Inc.,</u> 908 F.3d 428, 433 (9th Cir. 2018) (disability discrimination).

ADA discrimination claims are subject to the burden-shifting framework outlined in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-04 (1973). <u>See</u> <u>Curley v. City of N. Las Vegas</u>, 772 F.3d 629, 632 (9th Cir. 2014). If a plaintiff-employee establishes a prima facie case of discrimination, "[t]he burden then shifts to the employer to provide a legitimate, nondiscriminatory (or nonretaliatory) reason for the adverse employment action. If the employer does so, then the burden shifts back to the

29

employee to prove that the reason given by the employer was pretextual." Id.

Acio v. Kyo-ya Ohana, LLC, CIV. NO. 21-00053 JMS-KJM, 2022 WL 1137157, at *9 (D. Hawai`i Apr. 18, 2022) (alteration in Acio). "At the summary judgment stage, the 'requisite degree of proof necessary to establish a prima facie case . . . is minimal and does not even need to rise to the level of a preponderance of the evidence.'" Lyons v. England, 307 F.3d 1092, 1112 (9th Cir. 2002) (quoting Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994)).

### A.   **Person with a Disability**

For purposes of Chapter 378, "'[d]isability' means the state of having a physical or mental impairment which substantially limits one or more major life activities, having a record of such an impairment, or being regarded as having such an impairment." Haw. Rev. Stat. § 378-1. Viewing the record in the light most favorable to Gandolfo, he has established that he has a disability for purposes of the portion of Count I alleging discriminatory termination and the portion of Count I alleging failure to accommodate.

### B.   **Discriminatory Termination**

At the time of Gandolfo's termination, which was effective as of December 14, 2018, Gandolfo had been on continuous leave since May 23, 2018, and Avis had given him a

30

total of more than thirty-one weeks of different types of leave.
See Bunn Decl. at ¶¶ 16-24. Gandolfo had requested that his
leave of absence be extended to January 25, 2019. [Id. at ¶ 18.]
Gandolfo has admitted that, since he was notified on
December 13, 2018 of his termination, he has not been medically
released to return to work, and he has not been employed nor
attempted to seek employment. See Iriye Motion Decl., Exh. 1
(RFA) at 3-4.

> To satisfy the second element of his ADA
> discrimination claim — qualified individual —
> Plaintiff must show that, "with or without
> reasonable accommodation, [he] [could] perform
> the essential functions of the employment
> position." 42 U.S.C. § 12111(8). The "essential
> functions" of a job can be ascertained from the
> employer's "written description [of the job]
> [when] advertising or interviewing applicants for
> the job." Id. And as applicable here, "[i]t is a
> 'rather common-sense idea . . . that if one is
> not able to be at work, one cannot be a qualified
> individual.'" Samper v. Providence St. Vincent
> Med. Ctr., 675 F.3d 1233, 1237 (9th Cir. 2012).
> Thus, a plaintiff in violation of an employer's
> attendance policy is not a "qualified individual
> able to perform the essential function of the
> job." Hamilton v. GlaxoSmithKline, LLC, 835 F.
> App'x 936, 936-37 (9th Cir. 2021) (quoting
> Samper, 675 F.3d at 1237-38). "Except in the
> unusual case where an employee can effectively
> perform all work-related duties at home, an
> employee who does not come to work cannot perform
> any of his job functions, essential or
> otherwise." Samper, 675 F.3d at 1239 (quoting
> EEOC v. Yellow Freight Sys., Inc., 253 F.3d 943,
> 948 (7th Cir. 2001) (en banc) (internal quotation
> marks omitted)).

Acio, 2022 WL 1137157, at *9 (alterations in Acio) (some citations omitted).

Vo stated that Gandolfo worked at Avis's location at the Lihu`e Airport as an RSA, which is a standing position, with seated breaks. [Vo Decl. at ¶¶ 4-5.] Acoba, who was one of Gandolfo's managers during the relevant period, described the position as rental agent/customer sales representative ("CSR"). See Bunn Decl. at ¶ 25; Iriye Motion Decl., Exh. 4 (excerpts of Certified Transcript of Deposition of Cesar Acoba, Friday, April 21, 2023 ("Acoba Depo.)) at 73-74. The scope of an RSA/CSR's duties include "[a]ssist[ing] customers coming on board – coming to the location to pick up a car and make recommendations of [Avis's] products, like upgrading to a better car, selling the insurance packages that [Avis has]." [Iriye Motion Decl., Exh. 4 (Acoba Depo.) at 74.] In light of these duties, the RSA/CSR position was not the type of position in which Gandolfo could have "effectively perform[ed] all work-related duties at home," and therefore his inability to come to work meant he could not "perform any of his job functions, essential or otherwise." See Samper, 675 F.3d at 1239.

This Court notes that, in the 11/15/18 Charge Determination, the EEOC found there was "reasonable cause to believe that [Gandolfo] was denied a reasonable accommodation which resulted in him being discharged because of his

disability . . . ." [Vo Decl., Exh. 3 at PageID.1897.] However,
this determination alone does not create a triable issue of fact
as to Gandolfo's discriminatory termination claim. The Ninth
Circuit has recognized that, although "an EEOC determination
letter is a highly probative evaluation of an individual's
discrimination complaint," it is not "a free pass through
summary judgment." Mondero v. Salt River Project, 400 F.3d 1207,
1215 (9th Cir. 2005) (citation and internal quotation marks
omitted). In reviewing a case where "[i]t [wa]s impossible from
th[e determination] letter to know what facts the EEOC
considered and how it analyzed them," the Ninth Circuit noted:

> Examining similarly conclusory EEOC letters,
> other circuits have concluded that when the
> letters only report "bare conclusions," they have
> little probative value. See Cortes v. Maxus
> Exploration Co., 977 F.2d 195, 201–02 (5th Cir.
> 1992); see also Goldberg v. B. Green & Co., Inc.,
> 836 F.2d 845, 848 (4th Cir. 1988). In previous
> cases, we have upheld summary judgment in cases
> in which the EEOC itself has brought suit. See,
> e.g., EEOC v. Insurance Co. of N. Am., 49 F.3d
> 1418 (9th Cir. 1995). If the EEOC's suing is
> insufficient to create a genuine issue of
> material fact, then, a priori, a conclusory EEOC
> reasonable cause letter, at least by itself, does
> not create an issue of material fact.

Coleman v. Quaker Oats Co., 232 F.3d 1271, 1284 (9th Cir. 2000).
Although the 11/15/18 Charge Determination states the EEOC
conducted an investigation that included interviews of
witnesses, document review, and site visits, it does not
describe any of the evidence from the investigation that was the

basis for the EEOC's reasonable cause determination. <u>See</u> Vo Decl., Exh. 3 at PageID.1897. This Court therefore finds that the "bare conclusions" in the 11/15/18 Charge Determination, "by themselves, do not create an issue of material fact." <u>See</u> <u>Coleman</u>, 232 F.3d at 1284.

Therefore, even viewing the record in the light most favorable to Gandolfo, he cannot establish that he was qualified for the RSA/CSR position at the time of his termination. Because Gandolfo cannot establish this element of his prima facie case, there are no genuine issues of material fact as to the portion of Count I alleging that Gandolfo was terminated because of his disability, and Avis entitled to summary judgment as to that portion of Count I.

C. **<u>Failure to Accommodate</u>**

Discrimination under the ADA includes an employer's failure to make a reasonable accommodation. <u>Dunlap v. Liberty Nat. Prods., Inc.</u>, 878 F.3d 794, 799 (9th Cir. 2017). . . . .

"The ADA treats the failure to provide a reasonable accommodation as an act of discrimination if the employee is a 'qualified individual,' the employer receives adequate notice, and a reasonable accommodation is available that would not place an undue hardship on the operation of the employer's business." <u>Snapp v. United Transp. Union</u>, 889 F.3d 1088, 1095 (9th Cir. 2018) (citing 42 U.S.C. § 12112(b)(5)(A)). "Once an employer becomes aware of the need for accommodation, that employer has a mandatory obligation under the ADA to engage in an interactive process with the employee to identify and implement appropriate

reasonable accommodations." <u>Humphrey v. Mem'l
Hosps. Ass'n</u>, 239 F.3d 1128, 1137 (9th Cir.
2001).

<u>Armijo v. Costco Wholesale Warehouse, Inc.</u>, Civ. No. 19-00484-
ACK-RT, 2022 WL 1267254, at *11 (D. Hawai`i Apr. 28, 2022).
Gandolfo has presented evidence that Avis failed to accommodate
his disability by: harassing him regarding his use of leave to
attend doctor's appointments related to his disability; failing
to provide him with a parking accommodation between January 1,
2018 and May 11, 2018; failing to provide the chair that he
requested; and accusing him of failing to submit required
documentation for his April 2018 disability leave.

### 1.   **Qualified Individual**

Prior to the continuous leave that began on May 23,
2018 and continued through his termination, Gandolfo was
apparently performing the duties of his position, with
accommodations, including occasional leave periods. There is no
indication in the record suggesting that Gandolfo was unable to
perform the duties of his position at that time. Viewing the
record in the light most favorable to Gandolfo, this Court finds
that he has established the qualified-individual element of his
prima facie case for failure to accommodate claims.

### 2.   **Adequate Notice**

As to the April 2017 incident and the March/April 2018
incident when Gandolfo was harassed for missing work to go to

35

medical appointments associated with his disability, Avis had
adequate notice because Gandolfo requested leave prior to the
appointments. In the April 2017 incident, a manager approved
Gandolfo's request the day before the appointment, but on the
day of the appointment, three supervisors harassed Gandolfo and
attempted to prevent him to from going to the appointment. See
Vo Decl. Exh. 1 (6/13/18 Charge) at PageID.1888. For Gandolfo's
April 4, 2018 medical appointment, he submitted paperwork for
his leave request prior to March 28, 2018, but his supervisor,
Greg Alejandro ("Alejandro") claimed Gandolfo did not submit the
required paperwork and said Gandolfo could not go to the
appointment. Gandolfo also complained about the situation to
Acoba, who threatened Gandolfo with adverse employment actions
if he went to the appointment, but Gandolfo was not deterred and
went to the appointment. [Id. at PageID.1889.] Related to this
incident, on May 22, 2018, Alejandro again accused Gandolfo of
failing to submit the required paperwork for the April 2018
leave. See id. Based on Gandolfo's conversations with Alejandro
and Acoba, Avis had adequate notice of both the leave request
and Gandolfo's position that he had already submitted the
required paperwork for the April 4, 2018 appointment.

Avis also had adequate notice of Gandolfo's request
for a chair. Gandolfo's doctor apparently recommended the chair

36

during work at the April 4, 2018 appointment, and Gandolfo provided notice to Avis when he returned to work. See id.

However, whether Avis had adequate notice of Gandolfo's need for a parking accommodation between January 1, 2018 and May 11, 2018 is a closer question. Avis had notice that Gandolfo needed a parking accommodation for a two-month period after Dr. Juleff's 3/15/17 letter, i.e., until approximately May 15, 2017. See Bunn Decl., Exh. 1. Avis extended Gandolfo's parking accommodation until the change in its parking policy, which took effect on January 1, 2018. See Bunn Decl. at ¶¶ 6, 9-10. According to Avis, the parking accommodation was extended past May 15, 2017 in spite of the fact that Gandolfo did not provide any additional documentation showing his need for the accommodation after the period specified in Dr. Juleff's 3/15/17 Letter. See id. at ¶ 6. Gandolfo has not identified any evidence that is contrary to Bunn's testimony on this issue. The only evidence in the summary judgment record of another request for a parking accommodation is Gandolfo's request that Avis received on May 4, 2018 and which was formally granted by letter dated May 11, 2018. See 12/18 Filing, Exh. J-4 (5/11/18 Letter). Even viewing the record in the light most favorable to Gandolfo, there is no genuine issue of material fact, and this Court concludes, as a matter of law, that Avis did not have adequate notice that Gandolfo needed a parking accommodation for the

37

period from January 1, 2018 to May 11, 2018. Gandolfo has failed
to raise a genuine issue of material fact for trial as to a
required element of his failure to accommodate claim based on
the lack of a parking accommodation for the period from
January 1, 2018 to May 11, 2018. Avis is therefore entitled to
summary judgment as to that portion of Count I, and the Motion
is granted as to that portion of Count I.[17]

### 3.    Implementation of Appropriate Reasonable Accommodations

As to the harassment Gandolfo experienced in the April
2017 incident, the March/April 2018 incident, and the related
May 22, 2018 incident, Avis failed to grant Gandolfo the
reasonable accommodation – allowing him to attend his medical
appointments without harassment. There is no indication in the
record that allowing Gandolfo to attend the appointments would
have "place[d] an undue hardship on the operation of [Avis]'s
business." See Snapp, 889 F.3d at 1095. In fact, Gandolfo did go
to the appointments, in spite of the harassment, and there is no
evidence that Avis's operations were adversely affected by his
absences associated with those appointments. Further, Avis does
not deny that the incidents occurred, and argues only that

---

[17] As with the 11/15/18 Charge Determination, the 6/13/18
Charge Determination, [Vo Decl., Exh. 3 at PageID.1895-96,]
merely contains "bare conclusions" that, "by themselves, do not
create an issue of material fact." See Coleman, 232 F.3d at
1284.

Acoba, Alejandro, and other managers who allegedly harassed
Gandolfo have never "been [] officer[s] of [Avis] or person
wielding the executive power of [Avis]." See Bunn Decl. at
¶¶ 25-26. However, that fact is relevant only to the issue of
punitive damages. See Motion, Mem. in Supp. at 24-25. Viewing
the record in the light most favorable to Gandolfo, there are
genuine issues of material fact as the portion of Gandolfo's
failure to accommodate claim based on the April 2017 incident,
the March/April 2018 incident, and the related May 22, 2018
incident. Avis's Motion is therefore denied as to that portion
of Count I.

       As to Gandolfo's request for the accommodation of a
chair that would have allowed him to sit while he was behind the
counter, Avis's position is that it provided this accommodation.
See Bunn Decl. at ¶ 8 (citing Bunn Decl., Exh. 2 (emails
reflecting the purchase of chairs)). On April 19, 2018, Acoba
wrote:

> Per our conversation, here is a picture of one of
> the high chairs we purchase [sic] to accommodate
> Joseph [Gandolfo] and also the receipt for the
> additional chairs we purchased. We purchased
> additional chairs to make sure he has a chair
> assign [sic] to him at both locations.
>
> Additionally, all managers are aware to assign a
> chair for him to use during his shift.

[Bunn Decl., Exh. 2 at PageID.1909 (4/19/18 email from Acoba to
Kilbreath).] However, Gandolfo submits an email that he sent on

April 18, 2018 to Eric Daido ("Daido") – who was with the United

States Department of Labor and to whom Gandolfo had previously

spoken to about FMLA issues – and in which Gandolfo stated:

> When I came to work on Saturday I asked about the
> high office chair that I needed so I could stay
> off my painful legs while I attended to customers
> at the counter. I was told they were looking into
> it. Sunday and Monday my requests were also
> ignored and I stood for the entire shift at the
> computer. The counter is about 2 feet too high
> for a standard chair. Tuesday I started work at
> 12 . . . the one chair in the entire office that
> meets my needs was being used by another employee
> and was unavailable to me. At 2pm I texted Greg
> [Alejandro] and told him I needed chair. Later
> that afternoon the employee who was using it left
> for the day so I used it for a short time until I
> went on break at 5:35, I walked back in the
> office to get my water and I saw Greg adjusting
> and arranging that chair. I went on break and
> when I can back another employee took it . . . so
> it was not available to me for the rest of the
> evening. . . .

12/18 Filing, Exh. J-3A at PageID .2169 (part of 4/18/18 email

from Gandolfo to Daido) (some ellipses in original); see also

id., Exh. J-2 (email, dated 4/10/18 from Daido to Gandolfo,

noting their conversion earlier that day and providing

additional information and materials).

    In considering the parties' motions for summary

judgment, this Court cannot weigh the credibility of these

statements. See Estate of Lopez ex rel. Lopez v. Gelhaus, 871

F.3d 998, 1009 n.10 (9th Cir. 2017) ("At the summary judgment

stage, '[c]redibility determinations, the weighing of the

evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" (alteration in Lopez) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986))). Therefore, viewing the record in the light most favorable to Gandolfo, this Court finds that there are genuine issues of material fact as to his failure to accommodate claim based on his request for the accommodation of a chair. Avis's Motion is denied as to that portion of Count I.

## IV. **Retaliation**

### A.   **Scope of the Motion**

Avis argues it is entitled to summary judgment as to Gandolfo's Section 378-2(a)(2) claim that he was terminated in retaliation for making complaints about the discrimination and retaliation he was subjected to. [Motion, Mem. in Supp. at 20-23.] However, Count II is not limited to Gandolfo's termination. See Iriye Removal Decl., Exh. A (Complaint) at ¶ 140 (incorporating all previous paragraphs for purposes of Count II); id. at ¶ 142 (alleging Avis's "conduct described above is a violation of [Hawai`i Revised Statutes], § 378-2[(a)](2)").

Count II alleges: "It shall be [an] unlawful discriminatory practice for an employer to discriminate against an individual under [Hawai`i Revised Statutes], § 378-2[(a)](2)

41

who "has filed a complaint . . . respecting the discriminatory practices prohibited under this part." [Id. at ¶ 141.] In addition to the 6/13/18 Charge and 11/15/18 Charge, the Complaint cites an internal complaint filed by Gandolfo. See id. at ¶ 23 ("an internal harassment complaint with ABG integrity hotline against [Bonnie] Howard, Mr. Alejandro and [Thomasyna] Bungula" regarding the April 2017 incident), ¶ 116 (6/13/18 Charge), ¶ 132 ("second Charge of Discrimination with the EEOC and the Hawai`i Civil Rights Commission regarding his termination"). The 6/13/18 Charge alleged retaliation, and Gandolfo alleged he was subjected to "unlawful harassment and retaliation by management and non-management employees" after he filed the internal complaint regarding the April 2017 incident. See Vo Decl., Exh. 1 at PageID.1888. He also alleged "further retaliatory harassment" following the March/April 2018 incident. See id. at PageID.1889.

Although Avis seeks summary judgment as to all of Gandolfo's claims, see Motion at PageID.1848, Avis misses the mark because it fails to address the portion of Count II that is based on allegedly retaliatory actions other than Gandolfo's termination, see Motion, Mem. in Supp. at 20-23. Avis's Motion is therefore denied as to that portion of Count II.

**B.   Retaliatory Termination Claim**

The elements of a prima facie case of retaliation in violation of § 378-2(a)(2) are:

> (a) the plaintiff (i) has opposed any practice forbidden by HRS chapter 378, Employment Practices, Part I, Discriminatory Practices or (ii) has filed a complaint, testified, or assisted in any proceeding respecting the discriminatory practices prohibited under this part, (b) his or her employer, labor organization, or employment agency has . . . discharged, expelled, or otherwise discriminated against the plaintiff, and (c) a causal link has existed between the protected activity and the adverse action[.]

Lales v. Wholesale Motors Co., 133 Hawai`i 332, 356, 328 P.3d 341, 365 (2014) (some alterations in Lales) (citation and internal quotation marks omitted). "The McDonald-Douglas burden shifting analysis also applies to § 378-2(a)(2) retaliation claims." Bach v. Cmty. Ties of Am., Inc., CIV. NO. 18-00103 LEK-WRP, 2019 WL 6054675, at *9 (D. Hawai`i Nov. 15, 2019).

Avis does not dispute that Gandolfo filed EEOC charges alleging discriminatory practices prohibited under Chapter 378. There is also evidence that Gandolfo filed at least one internal complaint with Avis. It is also undisputed that Avis terminated Gandolfo's employment. Thus, Gandolfo has established the first two elements of his prima facie case.

Gandolfo has not identified any evidence regarding the causal link requirement. Avis acknowledges that Gandolfo's

termination occurred four weeks after he filed his 11/15/18 Charge. However, Motion, Mem. in Supp. at 21. However, "[t]emporal proximity alone generally has not been sufficient to establish causation unless the temporal proximity is very close." Bach, 2019 WL 6054675, at *10 (citing Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001)). In Breeden, the Supreme Court noted that the Tenth Circuit held that a three-month period between the protected activity and the adverse employment action was insufficient, and the Seventh Circuit held that a four-month period was insufficient. Breeden, 532 U.S. at 273-74 (citing Richmond v. Oneok, Inc., 120 F.3d 205, 209 (CA10 1997); Hughes v. Derwinski, 967 F.2d 1168, 1174–1175 (CA7 1992)).[18] For purposes of a motion for summary judgment, a four-week period would be sufficient to support an inference of causation.

Although Gandolfo was terminated after he filed the 11/15/18 Charge, the 11/13/18 Letter notified him that Avis would terminate his employment if he did not return to work by November 28, 2018. [12/18 Filing, Exh. J-8 (11/13/18 Letter).]

---

[18] Based on Breeden, Gandolfo's filing of the 6/13/18 Charge, which was approximately six months prior to his termination, is too remote in time from his termination to support an inference of causation. Similarly, the internal complaints mentioned in the 6/13/18 Charge, which were even further removed from Gandolfo's termination than the charge itself, are also too remote in time to support an inference of causation.

The decision to terminate Gandolfo's employment if he did not
return to work shortly after the 11/13/18 Letter was made before
Gandolfo filed the 11/15/18 Charge. In other words, the filing
of the 11/15/18 Charge could not have been the cause of
Gandolfo's termination. Cf. Motoyama v. Hawai`i, Dep't of
Transp., 864 F. Supp. 2d 965, 982 (D. Hawai`i 2012) (ruling that
the defendant's 9/9/09 termination of the plaintiff's employment
could not have been in retaliation for the plaintiff's 8/31/09
filing of an EEOC charge because the defendant sent the
plaintiff a letter on 8/18/09 notifying her of the impending
termination (citing Silver v. KCA, Inc., 586 F.2d 138, 142 (9th
Cir. 1978))).[19] This Court therefore concludes that Gandolfo has
failed to identify a genuine issue of material fact for trial as
to causation, an essential element of his retaliatory
termination claim.

Further, even if this Court concluded that Gandolfo
established his prima facie case, Avis has established a non-
retaliatory reason for his termination – he exhausted all of his
available leave benefits, was not able to return to work, and
had not provided Avis with sufficient documentation regarding

---

[19] Silver was abrogated on other grounds, as recognized in
McZeal v. City of Seattle, No. C05-1965P, 2006 WL 3254504, at
*6-7 (W.D. Wash. Nov. 9, 2006). Motoyama was affirmed on appeal.
584 F. App'x 399 (9th Cir. 2014).

when he would be able to return to work. See Bunn Decl. at
¶¶ 22-24.

Gandolfo argues Avis's reason is pretextual, as
evidenced by the fact that his doctor signed a Progress Report
stating Gandolfo would be able to return to work on January 25,
2019. See 12/18 Filing, Exh. J-6A at PageID.2193. However, the
Progress Report was only one part of the documentation that
Gandolfo's doctor was instructed to provide. See id. at
PageID.2191 (also listing "office notes and procedures reports"
and "[c]urrent treatment plan"). There is no evidence in the
record suggesting that Gandolfo's doctor provided those other
documents. Moreover, Gandolfo has admitted that, since his
termination, he has not been medically released to return to
work. See Iriye Motion Decl., Exh. 1 (RFA) at 3. Even viewing
the record light most favorable to Gandolfo, he has not raised a
genuine issue of material fact for trial as to the issue of
pretext.

Avis is therefore entitled to summary judgment as to
the portion of Count II alleging retaliatory termination, and
the Motion is granted as to that portion of Count II.

## V.    Punitive Damages

Gandolfo's prayer for relief includes a request for
punitive damages. [Iriye Removal Decl., Exh. A (Complaint) at
pgs. 18-19.] Avis seeks a summary judgment ruling that Gandolfo

is not entitled to punitive damages. [Motion, Mem. in Supp. at

24-25.] This district court has noted:

> The law in Hawaii regarding a corporation's
> liability for punitive damages appears well-
> settled. Punitive damages may be recovered
> against a corporate defendant only if the
> corporation expressly or impliedly authorized or
> ratified the tortious act of its agent. Baldwin
> v. Hilo Tribune-Herald, Ltd., 32 Haw. 87, 106-09
> (1931); Chin Kee v. Kaeleku Sugar Co., Ltd., 29
> Haw. 524, 537 (1926). Furthermore, any such
> authorization or ratification must come from
> "officers or any other person actually wielding
> the executive power of the corporation." Kealoha
> v. Halawa Plantation Ltd., 24 Haw. 579, 588
> (1918), quoted in Chin Kee, 29 Haw. at 537; see
> also W. Prosser, Handbook of the Law of Torts
> § 2, at 12 (4th ed. 1971).

Jenkins v. Whittaker Corp., 551 F. Supp. 110, 112 (D. Hawai`i

1982). As to Gandolfo's remaining claims - the portion of

Count I alleging failure to accommodate based on the 2017 April

incident, the March/April 2018 incident, the May 22, 2018

incident, and the failure to provide an appropriate chair in a

timely and effective manner; and the portion of Count II

alleging instances of retaliation other than his termination –

Gandolfo has not presented any evidence which suggests that Avis

officers or other Avis personnel with executive powers ratified

the allegedly discriminatory or retaliatory actions. Even

viewing the record in the light most favorable to Gandolfo,

there are no genuine issues of material fact, and this Court

rules, as a matter of law, that Gandolfo cannot recover punitive

damages if he prevails on his remaining claims. Avis's Motion is therefore granted as to the punitive damages issue.

## CONCLUSION

For the foregoing reasons, Avis's Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment, filed November 16, 2023, is HEREBY GRANTED IN PART AND DENIED IN PART. The Motion is DENIED as to Avis's request for summary judgment as to the following claims in Gandolfo's Complaint:

-the portion of Count I alleging failure to accommodate based on the 2017 April incident, the March/April 2018 incident, the May 22, 2018 incident, and the failure to provide an appropriate chair in a timely and effective manner; and

-the portion of Count II alleging instances of retaliation other than his termination.

The Motion is GRANTED as to all of Gandolfo's other claims and as to Gandolfo's request for punitive damages. Summary judgment is GRANTED in favor of Avis as to those claims and the request for punitive damages.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, January 29, 2024.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**JOSEPH GANDOLFO VS. AVIS BUDGET GROUP, INC.; CV 22-00246 LEK-KJM; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT**